**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

|  |  |  |
|---|---|---|
| **REPUBLIC OF GUATEMALA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Case No.** |
| | ) | |
| **IC POWER ASIA DEVELOPMENT LTD.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

———————————————————————

## <u>DECLARATION OF ALEXANDER SALVADOR CUTZ CALDERÓN</u>

I, Alexander Salvador Cutz Calderón, pursuant to 28 U.S.C. § 1746, states as follows:

1.      I am employed by the Ministry of Economy of the Republic of Guatemala ("Guatemala") as Director of the Unit of Foreign Trade.

2.      I submit this Declaration in support of Guatemala's petition ("the Petition"), which seeks an order and judgment recognizing an arbitration award against IC Power Asia Development Ltd. ("IC Power Asia").

3.      I make this Declaration by reference to the exhibit attached hereto and based on facts personally known to me and the office I hold.

4.      On October 20, 2020, an arbitral tribunal issued an award in the arbitration proceeding *IC Power Asia Development Ltd. v. the Republic of Guatemala*, PCA Case No. 2019-43 ("the Arbitration"), whereby the arbitral tribunal awarded costs and fees to Guatemala.

5.      I participated in the Arbitration, and therefore, I can attest that the copy of the treaty hereby attached as **Exhibit A** is the copy that was submitted by IC Power Asia in the Arbitration

1

as Exhibit C-1. It is also a correct and true copy of the Bilateral Investment Treaty between Guatemala and Israel of 2006.

6.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on January 10, 2022

Alexander Salvador Cutz Calderón / 344049-4

Firmado digitalmente por Alexander
Salvador Cutz Calderón / 344049-4
Nombre de reconocimiento (DN):
2.5.4.97=VATGT-344049-4, c=GT,
l=Guatemala, o=Ministerio de Economía,
title=Director, sn=Cutz Calderón,
givenName=Alexander Salvador,
serialNumber=IDCGT-2489052440801,
cn=Alexander Salvador Cutz Calderón /
344049-4,
0.9.2342.19200300.100.1.1=TINGT-1713088
-3, street=8a Ave 10-43 Zona 1
Fecha: 2022.01.10 14:37:26 -06'00'

Alexander Salvador Cutz Calderón

**CORTE DISTRITAL DE LOS ESTADOS UNIDOS**
**DISTRITO SUR DE NUEVA YORK**

| | |
|---|---|
| **REPÚBLICA DE GUATEMALA,** ) | |
| ) | |
| **Demandante,** ) | |
| ) | |
| c. ) | **Caso No.** |
| ) | |
| **IC POWER ASIA DEVELOPMENT LTD.,** ) | |
| ) | |
| **Demandado** ) | |

**DECLARACIÓN DE ALEXANDER SALVADOR CUTZ CALDERÓN**

Yo, Alexander Salvador Cutz Calderón, de conformidad con 28 U.S.C. § 1746, declaro lo siguiente:

1.    Soy empleado del Ministerio de Economía de la República de Guatemala ("Guatemala") como Director de Administración del Comercio Exterior.

2.    Presento esta Declaración como soporte a la solicitud de Guatemala ("la Solicitud"), la cual busca una orden y sentencia reconociendo un laudo arbitral en contra de IC Power Asia Development Ltd. ("IC Power Asia").

3.    Realizo esta declaración haciendo referencia al anexo adjunto a la presente y con base en los hechos que personalmente son de mi conocimiento y el cargo que ocupo.

4.    El 20 de octubre de 2020, un tribunal arbitral emitió un laudo en el procedimiento *IC Power Asia Development Ltd. c. la República de Guatemala*, PCA Case No. 2019-43 ("el Arbitraje"), en el cual el tribunal arbitral condenó en costos y gastos en favor de Guatemala.

1

5.      Yo participé en el Arbitraje, y por tanto, puedo declarar que la copia del tratado que se adjunta al presente como **Anexo A** es la copia que fue presentada por IC Power Asia en el Arbitraje como Anexo C-1. También es una copia auténtica y verdadera del Tratado Bilateral de Inversión entre Guatemala e Israel del 2006.

6.      Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto.

Firmado el 10 de enero de 2022

Alexander Salvador Cutz Calderón / 344049-4

Firmado digitalmente por Alexander Salvador Cutz Calderón / 344049-4
Nombre de reconocimiento (DN): 2.5.4.97=VATGT-344049-4, c=GT, l=Guatemala, o=Ministerio de Economía, givenName=Alexander Salvador, title=Director, sn=Cutz Calderón, serialNumber=IDCGT-2489052440801, cn=Alexander Salvador Cutz Calderón / 344049-4, 0.9.2342.19200300.100.1.1=TINGT-1713088-3, street=8a Ave 10-43 Zona 1
Fecha: 2022.01.10 14:36:05 -06'00'

_____
Alexander Salvador Cutz Calderón

# EXHIBIT A

Treaties Department - Ministry Of Foreign Affairs - Israel

# AGREEMENT

# BETWEEN

# THE GOVERNMENT OF THE STATE OF

# ISRAEL

# AND

# THE GOVERNMENT OF THE REPUBLIC OF

# GUATEMALA

# FOR THE RECIPROCAL PROMOTION AND

# PROTECTION OF INVESTMENTS

**C-001**

Treaties Department - Ministry Of Foreign Affairs - Israel

The Government of the State of Israel and the Government of the Republic of Guatemala, (hereinafter the "Contracting Parties").

DESIRING to intensify economic cooperation to the mutual benefit of both countries;

INTENDING to create favorable conditions for greater investments by investors of either Contracting Party in the territory of the other Contracting Party; and

RECOGNIZING that the reciprocal promotion and protection of investments on the basis of the present Agreement will be conductive to the stimulation of individual business initiative and will increase prosperity in both States,

HAVE AGREED as follows:

## ARTICLE 1
### Definitions

1. For the purposes of the present Agreement:

    (a) "Investments" shall mean any kind of assets, implemented in accordance with the legislation of the Contracting Party in whose territory the investment is made including, but not limited to:

        (1) movable and immovable property, as well as any other rights *in rem,* in respect of every kind of asset;

        (2) rights derived from stocks, shares, bonds, debentures and other kinds of interests in legal entities;

        (3) claims to money, goodwill and other assets and any claim having an economic value;

        (4) rights in the field of intellectual property, including, *inter alia,* patents, trade marks, geographical indications, industrial designs, technical processes, copyrights and related rights, undisclosed business information, trade secrets and know-how, topographies of integrated circuits and plant-breeders rights;

**C-001**

(5) business concessions conferred by legislation or under contract, including concessions to search for, cultivate, extract or exploit natural resources.

(b)   "Host Contracting Party" shall mean the Contracting Party in whose territory the investment is made, and "Home Contracting Party" shall mean, in relation to that investment, the other Contracting Party.

(c)   "Returns" shall mean the amount yielded by an investment including, but not limited to: dividends, profits, sums received from the total or partial liquidation of an investment, interest, capital gains, royalties or fees.

(d)   "Investor" shall mean:

(1) (i) with respect to the State of Israel: a natural person who is a national or permanent resident of the State of Israel who is not also a national of Republic of Guatemala;

(ii) with respect to Republic of Guatemala: a natural person who is a national of Republic of Guatemala who is not also a national or permanent resident of the State of Israel; or

(2) a legal entity, including a corporation, a firm, an association or a partnership:

(i) that was incorporated, constituted or otherwise duly organized under the legislation of the Home Contracting Party; or

(ii) that is controlled, directly or indirectly, by persons who are nationals or permanent residents of the Home Contracting Party, and it fulfills one of the following conditions:

    a) its registered office, center of management, or practical management is located in the territory of either Contracting Party,

    b) a substantial part of its economic activity is located in the territory of either Contracting Party;

Treaties Department - Ministry Of Foreign Affairs - Israel

Treaties Department - Ministry Of Foreign Affairs - Israel

    c) it was incorporated, constituted or otherwise duly organized under the legislation of the Host Contracting Party.

  (e) The term "territory" shall mean:

    (1) with respect to the State of Israel: the territory of the State of Israel including the territorial sea, as well as the continental shelf and the exclusive economic zone over which the State of Israel exercises sovereign rights or jurisdiction in conformity with international law.

    (2) With respect to the Republic of Guatemala: the land territory, maritime and air space over which the Republic of Guatemala exercises sovereignty, including inland waters, the exclusive economic zone and the continental shelf within which exercises sovereign rights and jurisdiction in accordance with international law and its domestic law.

  (f) "Freely usable currency" shall mean any currency that the International Monetary Fund determines, from time to time, as a freely usable currency in accordance with the Articles of the Agreement of the International Monetary Fund and Amendments thereto.

  (g) "legislation" of a Contracting Party shall mean the laws and regulations of that Contracting Party and the right to exercise the administrative powers conferred by those laws and regulations.

2. The provisions of this Agreement relating to investments shall apply to the reinvestment of the returns of an investment, which shall be granted the same treatment granted to the original investment, if the reinvestment is effected in accordance with the legislation of the Host Contracting Party. A change in the form of the investment or a change in the form of the reinvestment shall not affect their character as investments within the meaning of this Agreement if the change is effected in accordance with the legislation of the Host Contracting Party.

**C-001**

Treaties Department - Ministry Of Foreign A:::.: - Israel

## ARTICLE 2
### Promotion and Protection of Investments

1.  Each Contracting Party shall, in its territory, encourage and create favorable conditions for investments by investors of the other Contracting Party and, subject to its legislation, shall admit such investments.

2.  Investments made by investors of each Contracting Party shall be accorded fair and equitable treatment in accordance with the provisions of this Agreement, and shall enjoy full protection and security in the territory of the other Contracting Party. Neither Contracting Party shall in any way impair by unreasonable measures the management, maintenance, use, enjoyment or disposal of investments in its territory of investors of the other Contracting Party.

## ARTICLE 3
### Most Favored Nation and National Treatment

1.  Neither Contracting Party shall, in its territory, subject investments or returns of investments of investors of the other Contracting Party, to treatment less favorable than that which it accords to investments or returns of investments of an investor of any third state or, subject to its legislation, to treatment less favorable than that which it accords to investments or returns of investments of its own investors.

2.  Neither Contracting Party shall, in its territory, subject investors of the other Contracting Party, as regards their management, maintenance, use, enjoyment or disposal of their investments, to treatment less favorable than that which it accords to investors of any third state or, subject to its legislation, than that which it accords to its own investors.

## ARTICLE 4
### Compensation for Losses

Investors of the Home Contracting Party whose investments in the territory of the Host Contracting Party suffer losses owing to war or other armed conflict, revolution, a state of national emergency, revolt, insurrection, riot or other such similar activity in the territory of the Host Contracting Party, shall be accorded by the Host Contracting Party treatment, as regards restitution, indemnification, compensation or other settlement, not less favorable than that which it accords to its own investors or to investors of any third state. Resulting payments shall be freely transferable.

**C-001**

Treaties Department - Ministry Of Foreign Affairs - Israel

In this regard, the Contracting Parties wish to note the provisions of the final paragraph of Article 155 to the Political Constitution of the Republic of Guatemala.

## ARTICLE 5
### Expropriation

1.  Investments of investors of the Home Contracting Party shall not be nationalized, expropriated or subjected to measures having effect equivalent to nationalization or expropriation (hereinafter: "expropriation") in the territory of the Host Contracting Party, except for a public purpose related to the internal needs of the Host Contracting Party, and in accordance with the following terms:

    (a) The expropriation shall be made in accordance with the laws of the Host Contracting Party, on a non-discriminatory basis and against prompt, adequate and effective compensation not less favorable than that accorded to its own investors. Resulting payments shall be freely transferable.

    (b) Such compensation shall amount to the market value of the investment expropriated immediately before the expropriation or before the impending expropriation became public knowledge, whichever is the earlier, shall include interest at the applicable commercial rate on a market basis or as provided by law of that Contracting Party until the date of payment, shall be made without delay, be effectively realizable and be freely transferable.

    (c) The investors affected shall have a right, under the law of the   Contracting Party making the expropriation, to prompt review, by a judicial or other independent authority of that Contracting Party, of the legality of the expropriation and of the valuation of their investment, in accordance with the principles set out in this Article.

2.  Notwithstanding, the foregoing, with respect to intellectual property rights, the Contracting Parties may permit the unauthorized use of an intellectual property right, provided such authorization is made in conformance with the principles set forth in the Agreement of Trade Related Aspects of Intellectual Property Rights ("TRIPS") (1994).

## ARTICLE 6
### Transfer of Investments and Returns

1. Each Contracting Party shall, in respect of investments, guarantee to investors of the other Contracting Party the rights of unrestricted transfer of their investments and returns in accordance with the following terms:

   (i) Transfers shall be effected without delay in the freely usable currency in which the capital was originally invested or in any other freely usable currency agreed by the investor and the Host Contracting Party; provided that the investor has complied with all his fiscal and other financial obligations to government or local authorities of the Host Contracting Party.

   (ii) Unless otherwise agreed with the investor, transfers shall be made at the rate of exchange applicable on the basis of transfer according to the exchange regulations in force in the Host Contacting Party.

   (iii) In any case, transfers shall be in terms not less favorable than that accorded by the Host Contracting Party to its own investors.

2. Notwithstanding the foregoing:

   (i) When a Contracting Party is in serious balance of payments difficulties or in serious difficulties for the operation of the exchange rate policy or monetary policy, or under threat thereof, that Contracting Party may, in conformity with the conditions laid down within the framework of the GATT and with Articles VIII and XIV of the Articles of Agreement of the International Monetary Fund, adopt restrictive measures which may not go beyond what is necessary to remedy the situation, for a period not exceeding six months. The Contracting Party shall notify the other Contracting Party, as soon as possible, as to the measures taken, and the expected timetable for their removal.

   (ii) Such measures shall be equitable, non-discriminatory, and in good faith.

## ARTICLE 7
### Exceptions

1. Either Contracting Party may take measures strictly necessary for the maintenance or protection of its essential security interests. Such measures

Treaties Department - Ministry Of Foreign Affairs - Israel

**C-001**

Treaties Department - Ministry Of Foreign Affairs - Israel

shall be taken and implemented in good faith, in a non-discriminatory basis and so as to minimize the deviation from the provisions of this Agreement.

2.   The provisions of this Agreement relative to the granting of treatment not less favorable than that accorded to the investors of either Contracting Party or of any third state shall not be construed so as to oblige one Contracting Party to extend to the investors of the other, the benefit of any treatment, preference or privilege resulting from:

    (i)   any international agreement  or arrangement relating wholly or mainly to taxation or any domestic legislation relating wholly or mainly to taxation;

    (ii)   any existing or future customs union, free trade area agreement or similar international agreement, to which either Contracting Party is or will be Party, within the meaning of "customs union" or "free trade agreement" in accordance with Article XXIV of the GATT Agreement;

    (iii)   any existing or future bilateral or multilateral agreement concerning intellectual property;

    (iv)   any Agreement for the Reciprocal Promotion and Protection of Investments between Israel and a third state, that was signed before 1st of July, 2003.

## ARTICLE 8
### Settlement of Investment Disputes
### Between a Contracting Party and an Investor

1.   Any investment dispute between a Contracting Party and an investor of the other Contracting Party shall be settled by negotiations.

2.   If a dispute under paragraph 1 of this Article cannot be settled within six (6) months of a written notification of this dispute, it shall be on the request of the investor settled as follows:

    (a) by a competent court of the Host Contracting Party; or

    (b) by conciliation; or

    (c) by arbitration by the International Center for the Settlement of Investment Disputes (ICSID), established by the Convention on the Settlement of

Treaties Department - Ministry Of Foreign Affairs - Israel

Investment Disputes between States and Nationals of Other States, opened for signature at Washington, D.C. on march 18, 1965, provided that both Contracting Parties are Parties to the Convention; or

(d) by arbitration under the Additional Facility Rules of ICSID, provided that only one of the Contracting Parties is a Party to the ICSID Convention; or

(e) by an ad hoc arbitration tribunal, which is to be established under the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL). Unless otherwise agreed, all submissions shall be made and all hearings shall be completed within six (6) months of the date of selection of the Chairman, and the arbitral panel shall render its written and reasoned decisions within two (2) months of the date of the final submissions or the date of the closing of the hearings, whichever is later.

3.    Each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration in accordance with the provisions of this Article. This consent and the submission by a disputing investor of a claim to arbitration shall satisfy the requirements of:

(a) Chapter II of the ICSID Convention or the Additional Facility Rules of ICSID for written consent of the parties;

(b) Article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 ("The New York Convention"), for an agreement in writing.

4.    The choice of one dispute settlement mechanism will exclude any other. Notwithstanding the above, an investor who has submitted the dispute to national jurisdiction may have recourse to the arbitral tribunals mentioned in paragraph 2 of this Article so long as a judgment has not been delivered on the subject matter of the dispute by a national court.

5.    The award shall be final and binding. Each Contracting Party shall carry out without delay the provisions of any such award and provide in its territory for the enforcement of such award.

**C-001**

## ARTICLE 9
### Disputes Between the Contracting Parties

1.  Disputes between the Contracting Parties concerning the interpretation or application of this Agreement, should be settled through the diplomatic channel, which may include, if both Contracting Parties so desire, referral to a Bilateral Commission composed of representatives of both Contracting Parties or to conciliation.

2.  If a dispute according to paragraph 1 of this Article cannot be settled within six (6) months from notification of this dispute it may, upon the request of either Contracting Party, be submitted to an arbitral tribunal.

3.  Such an arbitral tribunal shall be constituted for each case in the following way: within two (2) months of the receipt of the request for arbitration, each Contracting Party shall appoint one member of the tribunal.  The two arbitrators shall then select a national of a third state on approval of the two Contracting Parties, and this person shall be Chairman of the tribunal.  The Chairman shall be appointed within two (2) months from the date of appointment of the other two members.

4.  If, within the periods specified in paragraph 3 of this Article, the necessary appointments have not been made, either Contracting Party may, in the absence of any other agreement, invite the Secretary General of the Permanent Court of Arbitration at the Hague (hereinafter: the "PCA") to make any necessary appointments.  If the Secretary  General of the PCA is a national of either Contracting Party or is otherwise prevented from discharging the said function, then the Depute Secretary General of the PCA who is not a national of either Contracting Party shall be invited to make the necessary appointments.

5.  Unless otherwise agreed, the arbitration shall be conducted in accordance with the UNCITRAL arbitration rules.  Unless otherwise agreed, all submissions shall be made and all hearings shall be completed within six (6) months of the date of selection of the Chairman, and the arbitral panel shall render its written and reasoned decisions within two (2) months of the date of the final submissions or the date of the closing of the hearings, whichever is later.

6.  The arbitral tribunal shall reach its decision by a majority vote.  Such decision shall be binding on both Contracting Parties.

7.  Each Contracting Party shall bear the cost of its own member of the tribunal and of its representation in the arbitral proceedings.  The cost of the Chairman

Treaties Department - Ministry Of Foreign Affairs Israel

and the remaining costs shall be borne in equal parts by the Contracting Parties.

## ARTICLE 10
### Insurance and Guarantee

In any proceeding involving an investment dispute, a Party shall not assert, as a defense, counterclaim, right of set-off or for any other reason, that indemnification or other compensation for all or part of the alleged damages has been received or will be received pursuant to an insurance or guarantee contract.

## ARTICLE 11
### Subrogation

1.  If a Home Contracting Party or its designated Agency (hereinafter: the "First Contracting Party") makes a payment under an indemnity against non commercial risks given in respect of an investment in the territory of the Host Contracting Party, the Host Contracting Party shall recognize:

    (a) the assignment to the First Contracting Party by legislation or by legal transaction of all the rights and claims of the party indemnified; and

    (b) that the First Contracting Party is entitled to exercise such rights and enforce such claims by virtue of subrogation, to the same extent as the party indemnified, and shall assume the obligations related to the investment.

2.  The First Contracting Party shall be entitled in all circumstances to:

    (a) the same treatment in respect of rights, claims and obligations acquired by it, by virtue of the assignment; and

    (b) any payments received in pursuance of those rights and claims, as the party indemnified was entitled to receive by virtue of this Agreement, in respect of the investment concerned and its related returns.

Treaties Department - Ministry Of Foreign Affairs - Israel

### ARTICLE 12
### Application of other rules

If the provisions of legislation of either Contracting Party or obligations under international law existing at present or established hereafter between the Contracting Parties in addition to the present Agreement contain rules, whether general or specific, entitling investors or investments of investors of one Contracting Party to a treatment more favorable than is provided for by this Agreement, such rules shall, to the extent that they are more favorable, prevail over the present Agreement.

### ARTICLE 13
### Application of the Agreement

This Agreement shall apply to investments existing at the time of entry into force of the Agreement as well as to investments made or acquired thereafter. However, the Agreement shall not apply to any dispute concerning an investment, which arose, or which was settled before its entry into force.

### ARTICLE 14
### Entry into Force

Each Contracting Party shall notify the other Contracting Party in writing, through the diplomatic channels, of the completion of its internal legal procedures required for the entry into force of this Agreement. This Agreement shall enter into force on the date of the latter notification.

### ARTICLE 15
### Duration and Termination

This Agreement shall remain in force for a period of ten (10) years. Thereafter it shall continue in force until the expiration of twelve (12) months from the date on which either Contracting Party shall have given to the other, through the diplomatic channels, written notice of termination. In respect of investments made while this Agreement is in force, its provisions shall continue in effect with respect to such investment for a period of ten (10) years after the date of termination and without prejudice to the application thereafter of the rules of general international law.

**C-001**

In witness whereof the undersigned, duly authorized thereto by their respective Governments, have signed this Agreement.

Done _____ in _Jerusalem_ this _7_ day of _November_ 200_6_, which corresponds to the _16th_ day of _Heshvan 5767_, in duplicate in Hebrew, Spanish and English languages, all texts being equally authentic. In case of differences in interpretation the English text shall prevail.

_____
**For the Government of the
State of Israel**

_____
**For the Government of the
Republic of Guatemala**

Treaties Department - Ministry Of Foreign Affairs - Israel