UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/5/2022___

---

REPUBLIC OF GUATEMALA,

                          Petitioner,

        -against-

IC POWER ASIA DEVELOPMENT LTD.,

                          Defendants.

No. 1:22-cv-00394 (CM)

---

**MEMORANDUM DECISION AND ORDER DENYING GUATEMALA'S MOTION FOR DEFAULT JUDGMENT**

McMahon, J.:

The Republic of Guatemala ("Guatemala") petitions this Court for an order and judgment confirming an arbitration award (the "Award") rendered in the United Kingdom on October 7, 2020 by an arbitral tribunal of the Permanent Court of Arbitration in *IC Power Asia Development Ltd. (Israel v. Republic of Guatemala*, Case No. 2019-43 (the "Arbitration"). (Dkt. No. 1 ("Pet.")).

Respondent IC Power Asia Development Ltd ("ICPA" or "Respondent")[1] has not appeared in this action. A certificate of default issued on March 29, 2022. (Dkt. No. 27).

Guatemala now moves for entry of a default judgment against ICPA pursuant to Fed. R. Civ. P. 55(b)(2).

For the reasons that follow, Guatemala's motion for default is DENIED.

---

[1] ICPA was formerly known as I.C. Power Ltd. The company changed its name in March 2016. (*See* Pet. ¶15, n. 5).

1

## BACKGROUND

### A. Parties

Petitioner Guatemala is a sovereign foreign state and was the respondent in the underlying Arbitration. (Pet. ¶6).

Respondent ICPA is a private limited liability company incorporated in Israel and was the claimant in the underlying Arbitration. (*Id.* ¶7).

### B. Relevant Non-Parties

Israel Corporation Ltd. ("IC") incorporated ICPA as a wholly owned subsidiary in 2010. (Dkt. No. 1-4 ("Award"), at ¶100). IC specifically created ICPA in order to "consolidate" IC's "Latin American and Israeli energy generation business." (Dkt. No. 1-10, at ¶5). Once ICPA was created, IC contributed two businesses to ICPA's holdings: Inkia Energy, Ltd. ("Inkia") – which held certain Latin American power generation assets – and O.P.C. Rotem Ltd. ("OPC") – which was an Israeli power generation company. (*Id.*). From its creation in 2010 until a sale of assets in 2017 (described further below), ICPA was focused on "own[ing], develop[ing], and operat[ing] power generation and distribution facilities" throughout Latin America and Israel. (Dkt. No. 1-10, ¶4).

In January 2015, IC transferred all of its shares in ICPA to Kenon Holding Ltd. ("Kenon"). (Award ¶101; Dkt. No. 2 ("Br."), at ¶2). Kenon is a company incorporated in Singapore and listed on the New York Stock Exchange ("NYSE"). (Br. ¶5).

In March 2016, Kenon engaged in an internal restructuring. It transferred all of its interest in ICPA to its wholly owned subsidiary, IC Power Pte. Ltd. ("IC Power"), which was to "serve as the holding company of [ICPA] and its business." (Br. ¶5; Award ¶101). Since then, IC Power, which is incorporated in Singapore, has been the parent holding company of ICPA. (Br. ¶5).

In the time period relevant for the purposes of this Court's analysis (2015-early 2016), IC Power Distribution Holdings Pte. Ltd. was a wholly owned subsidiary of ICPA.[2]

Mr. Javier García-Burgos served as the chief executive officer ("CEO") of ICPA, IC Power, and Inkia simultaneously in the relevant time period (2015-2016). (*See* Br. ¶22[3]; Dkt. No. 1-10). Mr. García-Burgos was a witness in the underlying Arbitration.

Similarly, Mr. Yoav Doppelt served on the board of directors of both ICPA and IC Power during the relevant time period. (*See* Br. ¶22). Mr. Doppelt was also a witness in the Arbitration.

Daniel Urbina concurrently served as the general counsel of ICPA and IC Power during the relevant time period. (*Id.*). Mr. Urbina was also a witness in the Arbitration.

## C. ICPA Acquires Two Guatemalan Electricity Distribution Companies

In 2015, ICPA was focused on expanding its investments in the energy distribution market throughout Latin America. (*See* Dkt. No. 1-10 (Declaration of ICPA's CEO Mr. García-Burgos), at ¶¶6-7). As part of this expansion, it sought to acquire energy distribution assets in Guatemala.

In early 2015, ICPA's CEO Mr. García-Burgos learned that Actis LLP ("Actis"), an investment fund based in the United Kingdom, intended to sell "the two largest electricity distribution companies in Guatemala" – Distribuidora de Electricidad de Occidente, S.A. ("DEOCSA") and Distribuidora de Electricidad de Oriente, S.A ("DEORSA") (together, the "Distributors"). (*Id.* at ¶9; Award ¶¶102-103; *see also* Dkt. No. 1-8; Dkt. No. 7-3; Br. ¶3-4).

Mr. García-Burgos reached out to Actis' financial advisor Citigroup New York ("Citi"), based in New York, and asked Citi and Actis "to include [ICPA] in the [bidding] process." (Dkt.

---

[2] *See* IC Power Pte. Ltd., Amendment No. 4 to Form F-1 Registration Statement under the Securities Act of 1933 (Dec. 15, 2016), p. ii, 35, F-19, F-161-162, F-184-185, *available at* https://www.sec.gov/Archives/edgar/data/0001649678/000119312516794204/d102505df1a.htm.

[3] IC Power Pte. Ltd., Registration Statement under the Securities Act of 1933 (Form F-1) (Aug. 31, 2015), p. 193, *available at* https://www.sec.gov/Archives/edgar/data/1649678/000119312515307805/d81507df1.htm.

No. 1-10, at ¶9). ICPA made an "indicative offer" to Citi, and based on that offer, "Actis and Citi selected [ICPA] to move to the next phase" of due diligence and valuation. (*Id.*).

ICPA board member Mr. Yoav Doppelt testified in the arbitration hearings that ICPA had a specific "strategic objective" in its acquisition of the Distributors – it hoped to "increase" and "balance" its revenues as part of "the preparation of IC Power to an IPO in New York." (Dkt. No. 1-12, at 6:7-17). The board saw in the Distributors "more stable" revenues that would assist its soon-to-be parent company IC Power to "go to IPO." (*Id.* at 7:20-24). And indeed, after the acquisition and subsequent restructuring, IC Power's shares were approved for listing on the NYSE in 2017. (Br. ¶5).

The acquisition of the two Guatemalan companies closed in January 2016 in New York. Specifically, the closing was "held at the offices of Clifford Chance US LLP, 31 West 52nd Street, New York, New York 10019." (Dkt. No. 7-3). At closing, ICPA acquired, through its wholly owned subsidiary IC Power Distribution Holdings Pte, Limited, an indirect shareholding in the Distributors. (Award ¶222). ICPA at that time also "took the effective control for directing the financial and operating policies of" the Distributors. (*See* Footnote 2, *supra*, at F-161-162, F-184-185).

The acquisition was executed through a stock purchase agreement which was governed by New York law and included an arbitration clause that stated the seat of an ICC arbitration "shall be in New York, New York" and the parties otherwise agreed to submit to the "non-exclusive jurisdiction of the Federal or State courts of New York, New York." (Br. ¶4; *see* Dkt. No. 7-4). The parties to the stock purchase agreement (and so to the arbitration agreement and its jurisdiction and venue provisions) were IC Power Distribution Holdings Pte, Limited as purchaser (the "Purchaser"), Inkia as purchaser guarantor, and the holding company "DEORSA-DEOCSA

Holdings Limited" as seller. (Dkt. No. 7-4). ICPA's CEO Mr. García-Burgos and General Counsel Daniel Urbina are both listed as the contacts for the Purchaser. The agreement was executed on behalf of the Purchaser by ICPA's General Counsel Daniel Urbina as "authorized officer" (along with one Joaquin Coloma).

The Court notes that Guatemala in its papers treats ICPA and "IC Power Distribution Holdings Pte, Limited" as if they were the same entity. Likewise, in the Award, the arbitration tribunal (the "Tribunal") treated ICPA as the acquiring party and did not distinguish for the purposes of the award between the ICPA and IC Power Distribution Holdings Pte, Limited named in the stock purchase agreement. (*See* Award ¶¶103, 192-193). Moreover, when "IC Power Distribution Holdings Pte, Limited" later sold its interest in the Distributors, the share purchase agreement identified ICPA, not IC Power Distribution Holdings, as the entity that reserved certain specified rights related to its acquisition of the Distributors (discussed further below).

**D.  The Distributors Face Charges of Tax Fraud, and ICPA Sells its Shares**

Not long after the acquisition concluded, in July 2016, the Superintendence of Tax Administration of Guatemala ("SAT") filed a criminal proceeding against the Distributors for tax fraud (the "Tax Case"), and a Guatemalan trial court granted SAT's request for a preventative seizure of the Distributors' bank accounts. (Br. ¶6). The SAT's criminal complaint accused the Distributors with tax fraud in relation to tax deductions for tax years 2011 and 2012. (Award ¶243).

The pendency of the criminal case and the loss of certain tax advantages that ICPA had anticipated prompted ICPA, again through IC Power Distribution Holdings Pte, Limited, to sell its Guatemalan assets to I Squared Capital, a private equity fund headquartered in New York, pursuant to an agreement governed by New York law and containing a New York exclusive forum selection clause. (*See* Dkt. No. 4-6). The sale took place in December 2017; the agreement does not specify where the closing took place. Pursuant to the share purchase agreement, ICPA retained the right

to bring investment treaty claims against Guatemala related to the Tax Case and the asset seizures. (Award ¶344; Br. ¶¶7, 13).

**E.  Guatemala Commences Arbitration Challenging Guatemala's Tax Measures**

In February 2018, ICPA commenced an arbitration against Guatemala, challenging the measures taken by Guatemala vis-a-vis the Distributors as violative of Guatemala's obligations under the Guatemala-Israel Bilateral Investment Treaty ("BIT"). (Br. ¶8). Specifically, ICPA challenged the SAT's initiation of criminal proceedings against the Distributors and the seizure of the Distributors' assets; ICPA argued that these measures were in breach of Guatemala's obligation to provide "Fair and Equitable Treatment" to investments made by investors under the BIT, as well as its obligation not to impair by unreasonable measures the "management, maintenance, use, enjoyment or disposal of investments in its territory of investors of the other contracting party" in violation of Article 2 of the BIT. (*See* Award ¶¶465, 610). ICPA also argue that Guatemala violated certain umbrella clause protections imported into the BIT through application of the treaty's "Most Favored Nation" clause. (*Id.* ¶617).

On November 14, 2019, the Tribunal was constituted, composed of Professors Albert Jan van den Berg, Guido S. Tawil, and Raúl Emilio Vinuesa.  (Pet. ¶16). The arbitration was conducted in London pursuant to the Arbitration Rules of the United Nations Commission on International Trade Law, as revised in 2013. (*Id.*).

After several rounds of written and oral submissions by the parties, a multi-day hearing, and post-hearing submissions on costs, the Tribunal issued the Award on October 7, 2020. (*Id.* ¶¶17-18). The Tribunal rejected all of ICPA's claims. ICPA was ordered to pay Guatemala USD 243,826.92 to cover arbitration costs and USD 1,559,215.69 to cover legal costs. (*Id.* ¶18).

ICPA never challenged the Award or paid Guatemala. (*See* Pet. ¶4).

**F. Guatemala Seeks to Confirm the Arbitration Award**

On January 14, 2022, Guatemala filed a petition before this Court, seeking an order recognizing the Award and a judgment in favor of Guatemala in the amount of USD 1,803,042.61, plus pre-judgment and post-judgment interest. (Pet. ¶26). Guatemala also asks for costs and attorney's fees. (*Id.*).

On February 11, 2022, Guatemala purported to serve ICPA through the Secretary of the State of New York pursuant to N.Y. Bus. Corp. Law § 307, which allows for service of process on the Secretary of State as agent for unauthorized foreign corporations over which there is personal jurisdiction under article 3 of the N.Y. C.P.L.R. (Dkt. No. 30-2). Guatemala then mailed a copy with notice by first class mail (UPS) to ICPA's last known address in Israel. (*Id.*; Dkt. No. 30, ¶13). Guatemala never filed an affidavit of service with the Court attesting to service pursuant to N.Y. Bus. Corp. Law § 307 until it filed its motion for default. (*See* Dkt. No. 30 and attachments).

On February 28, 2022, Petitioner served the Petition and papers in this action on Lawrence N. Charney of IC Power, ICPA's parent holding company. (*See* Dkt. No. 21). Mr. Charney is the Chairman of the Audit Committee and Chairman of the Nominating and Corporate Governance Committee for IC Power. (Dkt. No. 30, ¶12). Guatemala filed an affidavit of personal service on Mr. Charney on March 2, 2022.

ICPA did not respond or appear and a certificate of default issued on March 29, 2022. (Dkt. No. 27). Guatemala moved for default and attested that, as per this court's rules, it would serve the motion papers on ICPA in the same manner it served the Petition papers – that is, by personal delivery to Mr. Charney, by transmitting a copy to the Secretary of State of New York, and by mail to ICPA's last known address in Israel. (Dkt. No. 30, at 14).

ICPA did not respond to the motion.

## DISCUSSION

Even when a party fails to respond to a complaint, a petitioner is not entitled to a default judgment as a matter of right. "Default judgments 'are generally disfavored and are reserved for rare occasions.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)., *cert. denied*, 543 U.S. 1177 (2005). Indeed, the Second Circuit has described "'a default judgment [as] the most severe sanction which the court may apply.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Because of the severity of a default judgment and "'a strong preference for resolving disputes on the merits,'" a district court's "discretion in proceeding under Rule 55 [is] 'circumscribed.'" *Id.* Specifically, before entering a default judgment, the district court must pursue its "independent obligation to inquire into the existence of subject-matter jurisdiction," *id.* at 125-126, and "assure itself that it has personal jurisdiction over the defendant." *Id.* at 133 (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)). Neither jurisdictional question can be presumed to favor petitioner; in fact, the court must resolve "doubt . . . in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

### A.  SUBJECT MATTER JURISDICTION

Subject matter jurisdiction in this case is conferred by the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 (the "New York Convention"), which is enforced in the United States through Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*

Section 203 of the FAA states that the "district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." 9 U.S.C. § 203. An award "falls under the [New York] Convention" if the arbitration involves at least one foreign party and if the arbitral award arose "out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract or agreement described in section 2 of this title [9 U.S.C. § 2]." *See* 9 USC § 202. Section 2 of the FAA makes valid and enforceable "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration." 9 U.S.C. § 2.

While the FAA does not define the term "commercial," the Circuit courts that have considered the question have explained that the "commercial relationship requirement . . . is construed broadly." *BCB Holdings Limited v. Government of Belize*, 110 F.Supp.3d 233, 242 (D.D.C. 2015). As the Eleventh Circuit explained, "Congress meant for 'commercial' legal relationships to consist of contracts evidencing a commercial transaction, as listed in section 2, *as well as* similar agreements." *Bautista v. Star Cruises*, 396 F.3d 1289, 1298 (11th Cir. 2005) (emphasis in original).

The underlying arbitration in this case indisputably involves foreign parties. The issue in this case is whether the arbitral award arose out of a "commercial" legal relationship. Guatemala asserts that the Award arises from a "quintessentially commercial" relationship because "the Award pertains to ICPA's provision of electric distribution services through its investments in [the Distributors in] Guatemala . . . " (Pet. ¶13; Br. ¶37). And in concluding that it could hold an arbitration and enter an award in accordance with the Guatemala-Israel Bilateral Investment Treaty – which by its terms applies to investments by investors – the Tribunal itself recognized in the Award that, "The subject matter of the dispute concerns [ICPA's] investment in the energy

9

distribution market of Guatemala through the purchase of two Guatemalan companies . . . and the measures taken by the Government with respect to back taxes allegedly owed by the Distributors." (Award ¶3).

Because ICPA's "investment in the energy distribution market of Guatemala through the purchase of two Guatemalan companies" (*id.*) was a commercial transaction, and because the arbitrators themselves described the dispute as commercial in character, I conclude that the dispute arose out of a commercial legal relationship, and this court has subject matter jurisdiction over the Petition to confirm the award.

## B.  PERSONAL JURISDICTION

"Before a court may exercise personal jurisdiction over a defendant, three requirements must be met: (1) 'the plaintiff's service of process upon the defendant must have been procedurally proper'; (2) 'there must be a statutory basis for personal jurisdiction that renders such service of process effective'; and (3) 'the exercise of personal jurisdiction must comport with constitutional due process principles.'" *Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327–28 (2d Cir. 2016)). The Court addresses each of these in turn.

### 1.  *Statutory Basis for Personal Jurisdiction*

"'In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution,'" a federal court "'look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation." *Daou v. BLC Bank, S.A.L.*, --- F.4th ----, 2022 WL 2976322, at *4 (Jul. 28, 2022) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)). Under New York's long-arm statute, a court "may exercise general jurisdiction over a defendant under N.Y. C.P.L.R.

§ 301 or specific jurisdiction under . . . N.Y. C.P.L.R. § 302." *Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 252 F.Supp.3d 369, 376 (S.D.N.Y. 2017).

Guatemala argues in this case there is both general and specific jurisdiction over ICPA.

The Court disagrees that it has general jurisdiction over ICPA. A Court only has general personal jurisdiction over a foreign corporation in the "exceptional case" where that corporation's contacts with the "[s]tate are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). ICPA is not incorporated here and does not have its principal place of business here; rather, it is an Israeli company that does business primarily in Israel and Latin America. The only evidence that it has ever conducted any business activity in New York consists of the fact that it acquired the Distributors in a New York transaction. However, that one time deal does not confer general jurisdiction.

Guatemala argues that the following of ICPA's contacts with this forum are sufficient for general jurisdiction: (1) its acquisition of the Distributors; (2) its retention of legal counsel and financial advisors in New York; (3) the entrance of its subsidiaries into financial agreements governed by New York law with payments due in New York, and (4) the activities of its Singaporean parent company, IC Power, in New York. (Br. ¶¶16-26). But none of these contacts, even taken together, are "so continuous and systematic as to render [ICPA] 'at home'" in this jurisdiction.

By contrast, the Court agrees that there is specific jurisdiction. A court may exercise specific personal jurisdiction over a foreign corporation where: i) "it has a 'statutory basis' for such jurisdiction under New York's long-arm statute," and ii) the exercise of such jurisdiction is consistent with due process. *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 145 (N.D.N.Y. 2020) (quoting *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729

F.3d 215, 218 (2d Cir. 2013), and *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Under New York law, N.Y. C.P.L.R. § 302(a)(1) "confers on courts personal jurisdiction over a defendant who 'transacts any business within the state or contracts anywhere to supply goods or services in the state,' '[a]s to a cause of action arising from' such a transaction." *Daou*, 2022 WL 2976322, at \*4. "'To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.'" *Id.* (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). As the Second Circuit has recently explained "Section 302(a)(1) is a 'single act statute,' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).

The Court agrees that the acquisition of the Guatemalan Distributors was a transaction that arose in and was consummated in New York. Specifically, Actis' financial advisor Citi solicited the bids for the Distributors from New York; ICPA submitted the bid to the managing director and vice president of Citi in New York; and Citi and Actis accepted that bid presumably at least in part from New York, where Citi is based. The deal closed in New York. The stock purchase agreement that memorializes the deal is governed by New York law and the parties (including ICPA) agreed to New York as the exclusive forum for any ICC arbitration and a non-exclusive forum for other disputes. It can, therefore, fairly be said that ICPA transacted business in New York within the meaning of the New York long arm statute and availed itself of the New York forum in consummating the specific transaction that underlies the arbitral Award in this suit.

It is likewise clear that "there is a substantial relationship between the transaction and the claim asserted" in this case. ICPA's acquisition of the Distributors – consummated in New York – gave rise to the investment dispute which ultimately was arbitrated by the Permanent Court of Arbitration in *IC Power Asia Development Ltd. (Israel v. Republic of Guatemala*, Case No. 2019-43. It is that same dispute and resulting Award that Guatemala now seeks to confirm.

   2.   *Due Process*

"[D]ue process demands that each defendant over whom a court exercises jurisdiction have some 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Schwab*, 22 F.4th at 121 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)) (alterations in original). Guatemala must show that ICPA "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court" in New York by Guatemala. *In re Veon Ltd. Secs. Litig.,* No. 15-cv-08672 (ALC), 2018 WL 4168958, at *5 (S.D.N.Y. Aug. 30, 2018) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d. Cir. 2002)).

The Court finds that Guatemala has shown as much. ICPA purposefully availed itself of the privilege of doing business in New York by entering into a deal in New York – with more than one New York player, including Citigroup New York and financial and legal advisors in New York – to acquire the Distributors. The deal was done in New York. That suffices to show ICPA availed itself of this forum and could foresee being haled into Court in this forum in relation to that deal. If that were not enough, the fact that ICPA agreed to the jurisdiction and venue of New York's courts in connection with disputes relating to this deal confirms that it expected that it might be "haled" into court in New York. It thus does not offend traditional notions of fair play

and substantial justice to exercise jurisdiction over ICPA in relation to the transaction done in this forum.

### 3. *Service of Process*

"'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" *Valle v. GDT Enterprises, Inc.*, No. 19-CV-797(SJF)(AKT), 2020 WL 435295, at *1 (E.D.N.Y. Jan. 28, 2020) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).

"[P]roper service becomes highly important in the context of a motion for default judgment." *Broadcast Music, Inc. v. Nortel Grill, Inc.*, No. Civ–89–1278E, 1991 WL 46546, at *1 (W.D.N.Y. Mar. 29, 1991) (citing *Rankel v. Town of Greenburgh*, 117 F.R.D. 50, 53 (S.D.N.Y. 1987)). If service has not been properly effected, the Court is "without power to issue a judgment against such a party." *Id.*

First, the Court finds that personal service of process on Mr. Charney of IC Power, ICPA's parent company, does not constitute proper service on ICPA. "'It is hornbook law that service of process on a subsidiary does not constitute service on a parent corporation, nor does service on a parent constitute service on a subsidiary. Except in exceptional circumstances . . . the law respects separate corporate identities even where one corporation may wholly own another, or where they may share the same principals.'" *Giar v. Centea, a Div. of KBC Bank, NV*, No. 02 Civ. 7916(LLS), 2003 WL 1900836, at *2 (S.D.N.Y. Apr. 16, 2003) (quoting *In re Matter of Crespo*, 123 Misc.2d 862, 865, 475 N.Y.S.2d 319 (N.Y.Sup.Ct.1984)).

Guatemala argues that serving Mr. Charney was proper because IC Power was an "agent" of ICPA. However, neither the petition nor the record before the court contains any evidence of an agency relationship between this parent and subsidiary. As Guatemala itself explains, an agency

relationship only exists for the purpose of jurisdiction when a foreign corporation "affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available." *Perkins v. Sunbelt Rentals, Inc.*, No. 514CV1378BKSDEP, 2015 WL 12748009, at *10 (N.D.N.Y. Aug. 13, 2015) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)) (internal quotation marks omitted). There is no evidence of IC Power's performing services *on behalf of* ICPA in New York, much less conducting any activities of importance to ICPA. All Guatemala offers is that "ICPA received considerable benefits from IC Power's . . . activities in New York, the hallmark of an agency relationship for the purposes of personal jurisdiction." (Br., ¶26). But that is not the hallmark of an agency relationship; it is the result of their corporate affiliation. Guatemala is required to show and has not shown that IC Power, the Singaporean parent corporation of an Israeli subsidiary corporation, has acted as the "New York representative" for ICPA or has performed any business of ICPA in New York. There is neither a single allegation of the Petition nor a scintilla of evidence in the record that would justify this court's reaching such a conclusion. The fact that IC Power does business in New York and trades on the NYSE does not establish the necessary agency relationship between it and its Israeli subsidiary. And since the award is against ICPA – not IC Power – the fact that IC Power may be subject to personal jurisdiction in New York is irrelevant.

The facts of this case are nothing like the decisions on which Guatemala relies. In *Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851, 854 (N.Y. 1967) – the classic case under New York law in which an agency relationship was found as between parent and subsidiary – the New York Court of Appeals found an agency relationship between Hilton Reservation Service in New York

and its parent Hilton Hotels, a British corporation, because Hilton Reservation Service "does all the business which [Hilton Hotels] could do were it here by its own officials." *Id.* There is nothing in the record before the court to suggest IC Power "does all the business" that ICPA would do if it were here in New York. Likewise, in *Palmieri v. Estefan*, 793 F. Supp. 1182, 1192 (S.D.N.Y. 1992), Judge Sand found an agency relationship between Sony Music, a New York corporation, and its foreign subsidiaries because the activities of Sony Music in New York were "sufficiently important to the affiliates that if they had no representative, their own officials would undertake to perform them." Here, there is no allegation that IC Power performs any activities for ICPA here in New York. The only activity performed by or on behalf of ICPA of which this court is aware is its acquisition of the Distributors in early 2016; and it seems that ICPA concluded that acquisition itself, not through its parent.

Because there is no evidence that IC Power is ICPA's agent, service on an officer, director or manager of IC Power (Mr. Charney) who is not also an officer or director of ICPA is not good service on ICPA. If Guatemala is aware of other facts tending to show that IC Power has acted as ICPA's agent for the purpose of doing ICPA's business in New York, it should renew its motion on a fuller record.

Guatemala argues that it also served ICPA by service of process on the Secretary of State of New York pursuant to N.Y. Bus. Corp. Law § 307. Section 307(a) provides:

> In any case in which a non-domiciliary would be subject to the personal or other jurisdiction of the courts of this state under article three of the civil practice law and rules, a foreign corporation not authorized to do business in this state is subject to a like jurisdiction. *In any such case, process against such foreign corporation may be served upon the secretary of state as its agent*. Such process may issue in any court in this state having jurisdiction of the subject matter.

N.Y. B.S.C. § 307(a) (emphasis added). Article 3 of the N.Y. C.P.L.R. includes Section 302, providing for specific personal jurisdiction "by acts of non-domiciliaries." As discussed above,

this Court agrees that it has specific personal jurisdiction over ICPA (an unauthorized foreign corporation) pursuant to Section 302(a)(1); thus, Guatemala was permitted to served process on the Secretary of State as its agent.

However, in order to properly effect service of process under N.Y. Bus. Corp. Law § 307, Guatemala was required to follow all the "*strict service of process* procedures prescribed by" the statute. *See Newkirk v. Clinomics Biosciences, Inc.*, No. 1:06-CV-0553 (GLS/RFT), 2006 WL 2355854, at *3 (N.D.N.Y. Aug. 15, 2006) (citing cases) (emphasis added). Those procedures require not only that Guatemala personally deliver the papers on the Secretary of State, but also that Guatemala (1) send copies to ICPA "by registered mail with return receipt requested, at the post office address specified for the purpose of mailing process, on file in the department of state, or with any official or body performing the equivalent function, in the jurisdiction of its incorporation, or if no such address is there specified, to its registered or other office there specified, or if no such office is there specified, to the last address of such foreign corporation known to the plaintiff"; *and* (2) "file[] with the clerk of the court" the "proof of service . . . by affidavit of compliance with this section . . . , together with the process, within thirty days after receipt of the return receipt signed by the foreign corporation, or other official proof of delivery or of the original envelope mailed." N.Y. B.S.C. § 307(b), (c).

Guatemala only has done one of these things – serve the Secretary of State. Guatemala did not use registered mail with a return receipt to send copies to ICPA in Israel (Guatemala attests only that it used "first class" mail, *see* Dkt. No. 30-2), Guatemala does not specify whether it attempted to obtain ICPA's specified address for process within Israel before resorting to mailing process to ICPA's last known address, and it did not file an affidavit of compliance within 30 days after receipt of a return receipt (which it apparently did not bother to use) or other official proof of

delivery. Instead, the only affidavit of service filed within 30 days is the affidavit of personal service on Mr. Charney. Guatemala did not file an affidavit of compliance or proof that the mailing was delivered as required under N.Y. Bus. Corp. Law § 307 until it filed its motion for default on April 19, 2022 – over 60 days after it served the Secretary of State of New York and purportedly mailed the papers to ICPA's last known address. (*See* Dkt. No. 30 and attachments).

These deficiencies are identical to those in *Darby v. Compagnie National Air France*, 769 F. Supp. 1255 (S.D.N.Y. 1991) where the plaintiff attempted service of process pursuant to N.Y. Bus. Corp. Law § 307 but did not send copy by registered mail service and did not file the affidavit of compliance with the clerk of the court. The court there found that while it had personal jurisdiction under article 3 of the C.P.L.R. and the plaintiff had served the Secretary of State, the failure "to meet the additional jurisdictional requirements of BCL § 307 . . . render[ed] the court's exercise of jurisdiction improper." *Id.* at 1264. As a result, the court dismissed the claims against the unauthorized foreign corporation.

Here, service on ICPA was defective. Given the severity of the proposed consequences for ICPA – entry of a default judgement – the Court finds no reason to excuse the deficiencies in service.

Because the court has personal jurisdiction over ICPA in connection with this particular dispute (*see supra*, pp. 10-14), the Court will grant Guatemala 30 additional days from the date of this order to properly serve ICPA in accordance with N.Y. Bus. Corp. Law § 307. If ICPA does not answer after being properly served, Guatemala may renew its motion for default judgment.

## CONCLUSION

For the foregoing reasons, Guatemala's motion for default is DENIED and the Clerk's Certificate of Default is vacated.

Guatemala has 30 days from the date of this order to properly serve ICPA in accordance with N.Y. Bus. Corp. Law § 307.

The Clerk is directed to close the open motion at Docket Number 29.

This is the opinion and order of the Court. It is a written decision.

Dated: August 5, 2022

_____
                                    U.S.D.J.

BY ECF TO ALL COUNSEL